IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH DREES, | ) | |
| MATTHEW JENNINGS, RANDY BASLER, | ) | |
| CHAD LEFLER, and ORLANDA MCGEE, | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 25-933 (MN) |
| | ) | |
| v. | ) | |
| | ) | |
| AT&T SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT AT&T SERVICES, INC.'S
RENEWED MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS AND PARTIAL MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendant AT&T Services, Inc.*

OF COUNSEL:

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
(214) 698-3100

Daniel C. Gunning
WILSON TURNER KOSMO LLP
402 West Broadway, Suite 1600
San Diego, CA 92101
(619) 238-3211

Sara B. Tomezsko
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

February 20, 2026

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...............................................................................................1

II.     ARGUMENT .....................................................................................................1

    A.      Plaintiffs Jennings and McGee Should Be Compelled to Individual
        Arbitration Without Discovery's Delay ...............................................................1

        1.      Delaware Law Governs the Issue of Contract Formation ...........................1

        2.      The Court Should Compel Plaintiffs Jennings' and McGee's
               Claims to Arbitration without Discovery's Delay. ......................................2

             a.      There Is No Dispute of Fact Regarding the Formation of a
                  Valid and Enforceable Agreement to Arbitrate. ..............................2

             b.      No Contractual Defenses Exist to Void the Arbitration
                  Agreements. ..................................................................................5

        3.      AT&T Will Agree to Limited Discovery on the Issue of Notice for
               Plaintiffs Drees and Lefler Without Prejudice to Renew the Motion
               to Compel Arbitration as to Them. ............................................................8

    B.      Plaintiffs Fail to State a Claim for Disparate Impact .................................................9

        1.      Plaintiffs Fail to Allege a Specific Practice or Policy with a
               Discriminatory Effect ................................................................................10

        2.      Plaintiffs Fail to Plausibly Plead Statistical Significance. .........................13

        3.      Plaintiffs' Request for Leave to Amend Should be Denied ........................15

III.    CONCLUSION ..................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Adams v. City of Indianapolis*,
  742 F.3d 720 (7th Cir. 2014) ........................................................................14

*Andre v. Dollar Tree Stores, Inc.*,
  2019 WL 2617253 (D. Del. June 26, 2019)....................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................12

*Astellas Pharma Inc. v. MSN Pharms. Inc.*,
  2025 WL 254577 (D. Del. Jan. 21, 2025).......................................................2

*AT&T Mobility Servs. LLC v. Inzerillo*,
  2018 WL 10160964 (W.D. Mo. Jan. 31, 2018) ............................................2, 3

*Barrios v. AT&T Servs., Inc.*,
  2025 WL 1841254 (W.D. Tex. Jan. 7, 2025) ..................................................2

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002)............................................................................5

*Breen v. Chao*,
  253 F. Supp. 3d 244 (D.D.C. 2017)............................................................9, 11

*Catlin Specialty Ins. Co. v. CBL & Assocs. Props.*,
  2017 WL 4784432 (Del. Super. Ct. Sept. 20, 2017)........................................2

*Cephea Valve Techs., Inc. v. Abbott Lab'ys*,
  2024 WL 3291632 (D. Del. Apr. 19, 2024)......................................................7

*Clerk v. First Bank of Del.*,
  735 F. Supp. 2d 170 (E.D. Pa. 2010) ..............................................................7

*Dizon v. J.P. Morgan Chase*,
  660 F. Supp. 3d 268 (D. Del. 2023) (Noreika, J.)........................................3, 6

*Epic Sys. Corp. v. Lewis*,
  584 U.S. 497 (2018)........................................................................................8

*Galan v. AT&T*,
  2018 U.S. Dist. LEXIS 248781 (W.D. Tex. Mar. 19, 2018) ...........................2

*Gonzalez v. Avon Prods., Inc.*
  609 F. Supp. 1555 (D. Del. 1985).....................................................................4

*Graham v. State Farm Mut. Auto. Ins. Co.*,
  565 A.2d 908 (Del. 1989)................................................................................7

**TABLE OF AUTHORITIES**
(*Continued*)

Page(s)

*Guidotti v. Legal Helpers Debt Resol., L.L.C.*,
716 F.3d 764 (3d Cir. 2013)................................................................4

*Harris v. Green Tree Fin. Corp.*,
183 F.3d 173 (3d Cir. 1999)................................................................5

*Horowitz v. AT&T Inc.*,
2018 WL 1942525 (D.N.J. Apr. 25, 2018), *opinion clarified on denial of
reconsideration*, 2019 WL 77306 (D.N.J. Jan. 2, 2019).........................................13

*James v. Nat'l Fin.*,
LLC, 132 A.3d 799 (Del. Ch. 2016).........................................................6

*Kerr v. Gen. Motors LLC*,
2025 WL 2051621 (D. Del. July 22, 2025), *appeal filed*, No. 25-2610 (3d Cir.
Aug. 25, 2025) ........................................................................5

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020).................................................................14

*OC Tint Shop, Inc. v. CPFilms, Inc.*,
2018 WL 4658211 (D. Del. Sept. 27, 2018) ..................................................6

*Oxford House, Inc. v. Twp. of N. Bergen*,
158 F.4th 486 (3d Cir. 2025) ................................................9, 10, 11, 12, 13, 14, 15

*Pick v. Discover Fin. Servs., Inc.*,
2001 WL 1180278 (D. Del. Sept. 28, 2001) ..................................................8

*Pourreza v. UCB, Inc.*,
2025 WL 2689699 (D. Del. Sept. 19, 2025) ..................................................5

*Pourreza v. UCB, Inc.*,
2025 WL 2690187 (D. Del. Aug. 27, 2025) ..................................................4

*Quinn v. Love's Travel Stops & Country Stores, Inc.*,
2025 WL 2550860 (M.D. Pa. Sept. 4, 2025) ...............................................3, 4

*Smash v. Dover Downs, Inc.*,
2022 WL 2966431 (D. Del. July 27, 2022) ..................................................5

*Smith v. City of Jackson*,
544 U.S. 228 (2005).......................................................................9, 12

*Steele v. Docker, Inc.*,
2025 WL 961379 (D. Del. Mar. 31, 2025) ................................................4, 5

*Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
576 U.S. 519 (2015).......................................................................11

*Travelers Indem. Co. v. Dammann & Co.*,
594 F.3d 238 (3d Cir. 2010).................................................................15

**TABLE OF AUTHORITIES**
(*Continued*)

<u>Page(s)</u>

*Turner v. Jewel Food Stores, Inc.*,
   2005 WL 3487788 (N.D. Ill. Dec. 21, 2005) ..................................................................12, 13

*Turner v. Spaley*,
   501 Fed. App'x 101 (3d Cir. 2012)........................................................................................15

*Watson v. Fort Worth Bank & Tr.*,
   487 U.S. 977 (1988)................................................................................................................14

*Young v. Experian Info Sols., Inc.*,
   119 F.4th 314 (3d Cir. 2024) ...................................................................................................4

**Statutes**

28 U.S.C. § 1331 .............................................................................................................................1

29 U.S.C. § 216(b) ..........................................................................................................................8

## I.      INTRODUCTION

This Court should compel Plaintiffs Jennings and McGee to arbitration:  There's no fact dispute that they formed valid and enforceable agreements to arbitrate their claims against AT&T, and they offer no reason to void those agreements.  That should be the end of the matter in this Court.  Though the record AT&T has put forth reveals that Plaintiffs Drees and Lefler likewise formed valid and enforceable arbitration agreements with AT&T, their self-serving declarations disclaiming any knowledge of such agreements arguably create issues (albeit minor) of fact, so AT&T consents to limited, expeditious discovery as to Lefler and Drees without prejudice to renewing its motion to compel arbitration as to them.  To the extent this Court does not compel any plaintiff to arbitration at this time, Plaintiffs' disparate impact claims should be dismissed.

## II.      ARGUMENT

**A.      Plaintiffs Jennings and McGee Should Be Compelled to Individual Arbitration Without Discovery's Delay**

**1.      Delaware Law Governs the Issue of Contract Formation.**

The MAA is expressly governed by the Federal Arbitration Act ("FAA").  D.I. 23, Tab 1 ("Reyes Decl."), ¶ 16, Exs. 3-4.  Plaintiffs filed suit in the District of Delaware, expressly asserting subject-matter jurisdiction under 28 U.S.C. § 1331.  D.I. 17 ("AC") ¶¶ 10-15, 18, 21-22.  Despite relying extensively on case law from many states (some with no connection to the parties or facts at issue), Plaintiffs ultimately do not argue that another state's law controls.  In fact, Plaintiffs cite principles of contract formation under Delaware law and argue for limited discovery into arbitrability based on a line of cases within the Third Circuit. D.I. 28 ("Resp.") at 9–10, 12. Therefore, there is no dispute that Delaware law applies, and the Court should apply Delaware law

in the absence of an express choice of law clause. *See Astellas Pharma Inc. v. MSN Pharms. Inc.*, 2025 WL 254577, at *3 (D. Del. Jan. 21, 2025).[1]

In any event, if this Court were to apply the laws of the states where Arbitration Plaintiffs worked for AT&T, the Arbitration Plaintiffs are no better off. Courts in Texas and Missouri applying those states' laws have compelled arbitration under the MAA on substantially similar facts. *See Barrios v. AT&T Servs., Inc.*, 2025 WL 1841254 (W.D. Tex. Jan. 7, 2025) (compelling arbitration under Texas law where plaintiff, like Jennings, signed MAA during pre-onboarding paperwork); *Galan v. AT&T*, 2018 U.S. Dist. LEXIS 248781 (W.D. Tex. Mar. 19, 2018) (compelling arbitration under Texas law where, like here, AT&T sent plaintiff emails containing material terms of MAA and plaintiff continued working for AT&T without opting out); *AT&T Mobility Servs. LLC v. Inzerillo*, 2018 WL 10160964, at *1 (W.D. Mo. Jan. 31, 2018) (same, applying Missouri law). Arbitration Plaintiffs' claims belong in arbitration, regardless of which state's laws apply.

2.    **The Court Should Compel Plaintiffs Jennings' and McGee's Claims to Arbitration without Discovery's Delay.**

a.    **There Is No Dispute of Fact Regarding the Formation of a Valid and Enforceable Agreement to Arbitrate.**

Neither Plaintiff Jennings nor Plaintiff McGee have raised an issue of fact for the Court to resolve before compelling their claims to arbitration. The record demonstrates that Plaintiff Jennings received AT&T's offer to mutually arbitrate claims as part of his pre-onboarding

---

[1] Even in the absence of an agreement, "Delaware applies its own choice-of-law rules as the forum state." *Catlin Specialty Ins. Co. v. CBL & Assocs. Props.*, 2017 WL 4784432, at *4 (Del. Super. Ct. Sept. 20, 2017). Where the contract at issue has "nationwide" application and "no single, principal location," Delaware courts look to "the situs which links all the parties together." *Id.* at *5. In this case, that jurisdiction is Delaware, where Plaintiffs chose to file their lawsuit. AT&T welcomes the opportunity to provide further briefing on the choice of law issues if that would aid the Court in its analysis.

paperwork.  D.I. 23, Tab 3 ("Paratore Decl."), ¶¶ 12-15, Exs. 1-3.  There is no dispute that Plaintiff

Jennings signed into the CareerPath account he created when applying for a job at AT&T, accessed

the MAA through that account, and electronically signed the document on April 25, 2019.  *Id.*

Similarly, the record shows that Plaintiff McGee received an email from AT&T on May 21, 2014,

containing the essential terms of the MAA; accessed the full text of the MAA linked at the bottom

of that email on AT&T's intranet three days later; and acknowledged her receipt of and opportunity

to review the MAA by clicking the "Review Completed" button.  Reyes Decl., ¶¶ 14, 16-18, 22,

25-27, Exs. 2, 3, 8, 10.  Plaintiff McGee therefore had actual notice of the opt-out deadline and the

legal consequences of her choice, but accepted the offer by choosing not to opt out and continue

working for AT&T.  *Id.* at ¶ 32.

Plaintiffs Jennings and McGee do not offer any evidence to rebut this record.  In the

absence of any factual dispute, these facts warrant an order compelling their claims to arbitration.

*See Dizon v. J.P. Morgan Chase*, 660 F. Supp. 3d 268, 273–74 (D. Del. 2023) (Noreika, J.)

(granting motion to compel arbitration where, as here, employee electronically signed arbitration

agreement as a condition of employment); *Andre v. Dollar Tree Stores, Inc.*, 2019 WL 2617253,

at *7 (D. Del. June 26, 2019) (compelling arbitration where records showed plaintiff accessed

arbitration agreement containing opt out provision on corporate intranet and then failed to opt out).

Yet, Plaintiffs Jennings and McGee argue they are entitled to discovery because the record is

insufficient to find a meeting of the minds on their agreements to arbitrate.  They are wrong.

"[D]iscovery is not required when no factual dispute exists as to the existence or scope of

the arbitration agreement."  *Quinn v. Love's Travel Stops & Country Stores, Inc.*, 2025 WL

2550860, at *4 (M.D. Pa. Sept. 4, 2025) (internal citation omitted).  In other words, "limited

discovery is available only when warranted; that is, if there is a genuine dispute of material fact."

*Steele v. Docker, Inc.*, 2025 WL 961379, at *3 (D. Del. Mar. 31, 2025). In every case on which Plaintiffs rely to argue for limited discovery, both sides had submitted competent evidence, precluding the court's ability to resolve factual disputes as to contract formation. *See Quinn*, 2025 WL 2550860, at *3, *5 (ordering limited discovery where plaintiff opposed motion to compel with declaration containing more than bald assertion that he lacked knowledge of arbitration agreement); *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 777 (3d Cir. 2013) (ordering limited discovery where plaintiff supported argument that she was unaware of arbitration agreement with competing evidence).

In contrast, Plaintiffs Jennings and McGee offer no declarations, no competing version of the facts, and nothing to suggest the record requires further development. Their counsel alleges in the Amended Complaint that Plaintiff McGee (but not Plaintiff Jennings) was unaware of her contractual obligation to arbitrate, but lawyer-driven arguments are not sufficient evidence to create a genuine issue of material fact. *See Gonzalez v. Avon Prods., Inc*. 609 F. Supp. 1555, 1559 (D. Del. 1985) ("When faced with an affidavit supporting a motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of his pleading . . . There must be before the court some contrary affidavit or product of discovery if the adverse party wishes to raise a material issue of fact.").

There is no factual dispute for the Court to resolve with respect to Plaintiffs Jennings and McGee, and therefore no need to delay a ruling compelling their claims to arbitration. *See Young v. Experian Info Sols., Inc.*, 119 F.4th 314, 320 (3d Cir. 2024) (reversing order denying motion to compel arbitration and ordering discovery where "[t]here is no factual dispute about the existence of the agreement to arbitrate"); *Pourreza v. UCB, Inc.*, 2025 WL 2690187, at *2 & n.3 (D. Del. Aug. 27, 2025) (no discovery on contract formation necessary where, inter alia, plaintiff merely

held defendant to its burden of proof and did not challenge defendant's exhibits submitted in connection with motion to compel), *R&R adopted*, 2025 WL 2689699 (D. Del. Sept. 19, 2025); *Kerr v. Gen. Motors LLC*, 2025 WL 2051621, at *3 (D. Del. July 22, 2025) (no discovery warranted where plaintiff "at no point dispute[d] the existence or validity of the arbitration agreement" and provided his own copy), *appeal filed*, No. 25-2610 (3d Cir. Aug. 25, 2025); *Steele*, 2025 WL 961379, at *3–4 (limited discovery not warranted where parties did not ask for it or challenge exhibits submitted in connection with motion to compel arbitration).

### b.    No Contractual Defenses Exist to Void the Arbitration Agreements.

Because they have failed to create a factual dispute as to contractual formation, Plaintiffs Jennings and McGee must arbitrate their claims on an individual basis unless they can prove a contractual defense to enforcement. They cannot.

The MAA is supported by adequate consideration, despite Plaintiffs' arguments concerning lack of mutuality of obligation. "Mutuality of obligation" is not required for a contract to be enforceable in the Third Circuit. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 180 (3d Cir. 1999) ("Our finding in [*Autoradio U.S.A. v. Becker Autoradiowerk GmbH*] that mutuality is not a requirement of a valid arbitration clause is consistent with that of most other federal courts that have considered this issue."). Rather, an arbitration agreement is supported by adequate consideration when both parties agree to be bound by arbitration, like the MAA here. *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603–04 (3d Cir. 2002); *Smash v. Dover Downs, Inc.*, 2022 WL 2966431, at *2 (D. Del. July 27, 2022) (arbitration agreements that require parties to "forego

the right to sue each other in court and further agree to arbitrate 'any dispute that may arise from' Plaintiff's employment" are supported by adequate consideration).[2]

Nor have Plaintiffs carried their burden to prove the MAA is unconscionable. In Delaware, "[p]rocedural unconscionability alleges defects in the process [of] adopting the contract provision." *OC Tint Shop, Inc. v. CPFilms, Inc.*, 2018 WL 4658211 (D. Del. Sept. 27, 2018) (citing *James v. Nat'l Fin.*, LLC, 132 A.3d 799, 814–15 (Del. Ch. 2016)). Substantive unconscionability "tests the substance of the exchange" and is only found where the "terms evidence a gross imbalance that 'shocks the conscience.'" *Nat'l Fin., LLC*, 132 A.3d at 815 (citation omitted). The unconscionability analysis considers both types "in unity with each other." *OC Tint Shop, Inc.*, 2018 WL 4658211, at *3. The burden of proof is on the party claiming unconscionability. *Id.*

The fact that plaintiffs did not have the opportunity to negotiate the terms of the MAA does not render the agreement unenforceable. "[U]nequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable," and courts "regularly enforce arbitration agreements that are a condition of employment" like the MAA that binds Plaintiff Jennings. *Dizon*, 660 F. Supp. 3d at 273 (citations omitted) (collecting cases). Plaintiff McGee was not forced to agree to arbitration, but she must still prove that "the party with superior bargaining power used it to take unfair advantage of his weaker counterpart" to demonstrate that

---

[2] Differences in the types of claims that the parties agree to arbitrate do not render the MAA unenforceable, either. The fact that the MAA permits employees to pursue state disability insurance and ERISA claims outside of arbitration cannot possibly suggest unconscionability or "one-sided" terms favorable to the employer. Reyes Decl., Exs. 3, 4. This Court has also previously enforced arbitration agreements limiting the defendant employer's arbitration obligation to claims it has against the employee, while requiring the employee to arbitrate claims against both the company and their "officers, directors, shareholders, employees or agents." *Dizon*, at 660 F. Supp. 3d at 270, 274.

the MAA is so one-sided as to be oppressive. *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 912 (Del. 1989). She cannot because AT&T gave her the ultimate upper hand in negotiations: she could have rejected AT&T's offer to mutually arbitrate claims without any adverse impact to her employment. Reyes Decl., Ex. 2 ("Remember, the decision is yours. There are no adverse consequences for anyone opting out of the Management Arbitration Agreement."); Ex. 4 ("The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision.").[3]

Further, the MAA contains no provisions unfairly favoring AT&T or foreclosing an employee's ability to adequately prosecute claims in arbitration. Plaintiffs bemoan the fact that the MAA limits both parties to three depositions, but this court has previously enforced arbitration agreements that provided for no depositions at all. *See Cephea Valve Techs., Inc. v. Abbott Lab'ys*, 2024 WL 3291632, at *3 (D. Del. Apr. 19, 2024) (citations omitted) ("Plaintiff ignores that 'the law of unconscionability does not invalidate an arbitration term that imposes significantly pared-down procedures for arbitration.' The terms of the arbitration agreement apply equally to both sides, and Judge Fallon did not err in discounting Plaintiff's conclusory allegations of the agreement being 'lopsided.'"). In any event, the MAA permits the arbitrator to enlarge any discovery limits if necessary. Reyes Decl., Ex. 4 ("The Arbitrator may grant such additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery

---

[3] Plaintiffs cite *Clerk v. First Bank of Del.*, 735 F. Supp. 2d 170, 181 (E.D. Pa. 2010), a case applying Pennsylvania law, to argue that opt-out provisions do not automatically prohibit a finding of procedural unconscionability. While that may be true in the abstract, the *Clerk* case is highly distinguishable. There, the plaintiff was given only seven days to opt out – far fewer than the 60 days AT&T gave employees to consider the MAA and which courts generally find sufficient to defeat a finding of conscionability. *Id.* at 183 (contrasting facts in *Clerk* from other cases in which opt-out period lasted 15 to 60 days). There was also separate indicia of procedural unconscionability, including the use of small, un-bolded print to obscure the arbitration provision, that are absent from this record. *Id.*

to adequately arbitrate the claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute-resolution mechanism.").

Finally, the requirement that Plaintiffs arbitrate individually is neither remarkable nor a basis to invalidate the MAA.  It is "generally accepted" that an arbitration clause is not unconscionable because it precludes class or collective actions.  *See Pick v. Discover Fin. Servs., Inc.*, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (allowing such waivers in the ADEA claims context)).  The Supreme Court has long affirmed the legality of class and collective action waivers including those pursuant to 29 U.S.C. § 216(b), the mechanism that permits collective actions pursuant to the ADEA.  *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 515 (2018) ("this Court held decades ago that an identical collective action scheme (in fact, one borrowed from the FLSA) does not displace the Arbitration Act or prohibit individualized arbitration proceedings") (citing *Gilmer*, 500 U.S. at 32).

For the foregoing reasons, the Court should conclude on the present record that the MAA is valid and enforceable as to Plaintiffs Jennings and McGee and compel their claims to individual arbitration.

### 3.    AT&T Will Agree to Limited Discovery on the Issue of Notice for Plaintiffs Drees and Lefler Without Prejudice to Renew the Motion to Compel Arbitration as to Them.

Plaintiffs Drees and Lefler have submitted declarations in opposition to AT&T's motion to compel arbitration as to them, disclaiming their knowledge of any arbitration agreement. Because those declarations arguably raise a factual dispute regarding their notice of the MAA and its terms (however slight), AT&T will agree to delay a ruling on its motion to compel arbitration as to Plaintiffs Drees and Lefler to permit limited discovery into whether Plaintiffs Drees and Lefler had notice of the MAA (inquiry or otherwise) and its material terms. Such discovery should be limited, given the narrow nature of the dispute and the completeness of the record AT&T has

already supplied in support of its motion. AT&T suggests a period of no more than 60 days from the date of the Court's order to complete that discovery limited to 10 requests for production and 10 interrogatories per side, and a deposition of each of Plaintiff Drees and Plaintiff Lefler capped at three hours per witness. AT&T reserves the right to renew its motion to compel arbitration as to Plaintiffs Drees and Lefler upon the completion of limited discovery, and reserves all rights and objections with respect to any discovery requests Plaintiffs Drees and Lefler may serve.[4]

## B.    Plaintiffs Fail to State a Claim for Disparate Impact

Plaintiffs' response does not remedy their failure to (1) allege that a *specific* practice or policy has a discriminatory effect on a protected class—here, individuals over forty—or (2) do more than summarily allege the existence of a statistically significant impact. *Oxford House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 494 (3d Cir. 2025) (emphasis added). Instead, Plaintiffs offer no meaningful rebuttal to the reality that they challenge a single decision to terminate employees with a certain number of sales coding violations, not any discrete policy. *See Breen v. Chao*, 253 F. Supp. 3d 244, 266 (D.D.C. 2017). Rather than identifying a discrete policy, Plaintiffs point to AT&T's Code of Business Conduct, among other purported policies, which sets forth broad guidelines of ethical behavior for all AT&T employees, but bears no resemblance to the "*specific* test, requirement, or practice" that the Supreme Court requires. *See Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis added).

As to the requirement that they plausibly plead a statistically significant impact, Plaintiffs neither confront the case law imposing this requirement nor claim that they have satisfied that case

---

[4] Similar discovery is not warranted as to Plaintiffs Jennings and McGee for the reasons described above in section II.A.2.a. However, should the Court disagree and find that discovery is also warranted as to those Plaintiffs, AT&T respectfully requests that this discovery be subject to the same limitations that AT&T proposes for Plaintiffs Drees and Lefler.

law, instead asserting without authority or explanation that it is sufficient simply to allege "an adverse age-based disparity." Resp. at 30. Because Plaintiffs have not plausibly alleged either of these key elements of their claim, their disparate impact claim should be dismissed, at least as to Basler, and to the Arbitration Plaintiffs as well if the Court does not compel arbitration.

### 1. Plaintiffs Fail to Allege a Specific Practice or Policy with a Discriminatory Effect.

Plaintiffs remain unable to name a *specific* AT&T practice or policy that discriminates against individuals above forty. It is well-established in this Circuit that a "one-time decision" is insufficient to amount to a practice or policy. *Oxford House*, 158 F.4th at 494; *see* Motion at 21–22. A "generalized policy" is similarly insufficient. *Id.* But Plaintiffs fail to distinguish the Amended Complaint's allegations from either.

*First*, Plaintiffs acknowledge in their response that their terminations were the result of a *one-time decision* by AT&T to terminate Mid-Market Sales Team members with three or more sales coding violations.[5] *See* Resp. at 4, 7. This echoes the Complaint's own allegations that "[i]n approximately April 2024 AT&T allegedly conducted an audit or investigation of 'rip and replace' sales," and that, as a result of that audit and investigation, AT&T "made the decision to terminate Mid-Market Sales Team members with more than 3 or 4 sales coding violations." AC ¶¶ 80, 86, 96(c).

This is fatal to their Complaint. The Third Circuit has been clear that a "one-time decision" is not sufficient to support a disparate impact claim; in fact, it has specifically held that "at the pleading stage for [a disparate impact] claim, the complaint must first allege that a specific practice

---

[5] This makes Plaintiffs' chastisement of AT&T for supposedly suggesting that the terminations were "just a big coincidence, or a one-off event" (Resp. at 28) difficult to understand. AT&T has never claimed that the terminations were "just a big coincidence," and all parties agree they were a one-off event. *Id.*; *see* Resp. at 4; AC ¶¶ 80, 86, 96(c).

or policy has a discriminatory effect on a protected class, *as opposed to* a generalized policy or a

'one-time decision.'" *Oxford House*, 158 F. 4th at 494 (addressing FHA and ADA claims)

(emphasis added) (citations omitted). After all, a "one-time decision may not be a policy at all."

*Tex. Dep't of Housing & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 543 (2015).

*Breen v. Chao,* 253 F. Supp. 3d 244 (D.D.C. 2017), is thus squarely on point, and Plaintiffs'

half-hearted attempt to distinguish it fails. Plaintiffs first note that *Breen* is a summary judgment

opinion, which has nothing to do with the substantive legal point about what sorts of "policies"

can give rise to a disparate impact claim; *Breen*'s holding—which echoes *Oxford House*, a motion

to dismiss case—is that one-time decisions cannot. 253 F. Supp. 3d at 266. On that point,

Plaintiffs note only that *Breen* involved a "one-day reduction in force due to market and system

changes," but they offer no theory or explanation of why that would make *Breen* any less of a

"policy" than the one-time decision due to an investigation of sales coding violations that Plaintiffs

allege here. Resp. at 29. Finally, Plaintiffs note that *Breen* involved "the overall A-76 process

leading to the RIF," while this case involves "application of a sales coding policy." *Id*. Again, it

is entirely unclear—and unexplained—why a one-time decision to apply the overall A-76 process

is any less of a "policy" than a one-time decision to terminate employees who have coded sales

wrong a specific number of times. Plaintiffs' core allegation is that AT&T made an unsupported

decision to terminate Plaintiffs as part of a single investigation that terminated employees meeting

a certain standard (three to four violations) set specifically for that single instance. AC ¶¶ 96,

96(c). That falls squarely within *Breen*. *Id*.

*Second*, Plaintiffs virtually ignore *Smith*'s requirement of a specific facially neutral policy,

characterizing it as merely holding that the ADEA permits disparate impact claims. Resp. at 26.

But the far more relevant point is that *Smith rejected* a disparate impact claim where the plaintiffs

pointed to a pay plan that was "relatively less generous to older workers than to younger workers" but failed to "identif[y] any specific test, requirement, or practice within the pay plan that has an adverse impact on older workers." *Smith*, 544 U.S. at 241. The Court squarely held that it was "*not enough* to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact"; the plaintiff must "isolat[e] and identify[] the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Id*. (first emphasis added; second emphasis in original).

Plaintiffs here make no attempt whatsoever to do so, instead doubling down on the assertion that the complaint identifies the "code of business conduct policy," "sales commissions policy," and a "list of policies" that AT&T told the EEOC that Plaintiffs violated. Resp. at 28. But simply labeling an expansive universe of AT&T policies "specific polic[ies]," Resp. at 28, does not make it so, or satisfy basic pleading standards. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *Smith* is fully on point; a sweeping theory that some policy was the problem is not sufficient in the absence of identification of a "specific test, requirement, or practice" that has the disparate impact. *Smith*, 544 U.S. at 241; *Oxford House*, 158 F.4th at 494 (requiring allegations of a "specific practice or policy [that] has a discriminatory effect on a protected class").

*Turner v. Jewel Food Stores, Inc*.—the single unpublished, out of circuit district court decision Plaintiffs cite in response—does not salvage their failure to plausibly allege a specific policy. 2005 WL 3487788 (N.D. Ill. Dec. 21, 2005). As an initial matter, it was decided pre-*Twombly*, and thus did not impose the plausibility standard that defeats Plaintiffs' claim. But it is also inapposite. In *Turner*, the plaintiff challenged discrete, on-the-ground employment practices

12

(reduced hours, denied transfers/promotions, and less favorable shift scheduling) allegedly implemented through differential treatment of employees covered by "older" collective bargaining agreements. *Id.* at *2. Those allegations thus identified a much more specific employer policy of giving differential treatment to workers under older CBA agreements. That is very different from pointing to a general code of ethics or sales coding policies.

*Third,* Plaintiffs' continued assertions that their termination was the product of *intentional* discrimination preclude their ability to state a claim for disparate impact. Indeed, Plaintiffs' response straightforwardly says their terminations were the result of AT&T's "scheme to terminate older employees." Resp. at 5 (cleaned up). But Plaintiffs cannot simultaneously claim that "AT&T did not terminate younger employees even though younger employees engaged in the same or similar conduct" (Resp. at 29 (quoting AC ¶ 120))—and that Plaintiffs were terminated pursuant to a facially neutral policy. Instead, "[w]here the employment practices support[ing] the Plaintiff's disparate impact claims are the employment practices supporting the disparate treatment claims, they should be dismissed." *Horowitz v. AT&T Inc.*, 2018 WL 1942525, at *22 (D.N.J. Apr. 25, 2018) (quotations omitted), *opinion clarified on denial of reconsideration*, 2019 WL 77306 (D.N.J. Jan. 2, 2019); *see* Motion at 26–27.

### 2.    Plaintiffs Fail to Plausibly Plead Statistical Significance.

Plaintiffs' admitted failure to sufficiently plead a statistically significant impact provides another ground for dismissal of their Amended Complaint. To state a claim, Plaintiffs must "provide data plausibly suggesting that the challenged policy or practice *actually* has a disparate impact"—even at the pleading stage. *See Oxford House, Inc*., 158 F.4th at 494 (citation omitted). While the "data need not be a perfect methodological fit," it must "plausibly suggest[] an actual statistical disparity for members of the protected class and raise[] a reasonable expectation that discovery will reveal methodologically sound statistical evidence at trial." *Id.* at 495; *see also*

13

*Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994–95 (1988) (data "must be sufficiently substantial" to raise "an inference of causation"). So Plaintiffs must provide statistical analysis using appropriate comparator groups that reveal disparities between populations that are relevant to the claim Plaintiffs seek to prove. *Mandala v. NTT Data, Inc*., 975 F.3d 202, 210 (2d Cir. 2020).

Plaintiffs dispute this requirement (without supporting law) rather than attempting to meet it. They assert that they are "not required to prove statistics at this stage," and can simply allege "an adverse age-based disparity." Resp. at 30. But AT&T is not arguing that Plaintiffs must *prove* anything; only that they must do more than summarily allege a disparity. Instead, Plaintiffs must plead data that "plausibly suggests an actual statistical disparity." *Oxford House*, 158 F. 4th at 494–95; *see also Mandala*, 975 F.3d at 210 ("But even at this early juncture, the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact.") (emphasis in original); *Adams v. City of Indianapolis*, 742 F.3d 720, 733 (7th Cir. 2014) (disparate-impact plaintiffs may "rely on a variety of statistical methods and comparisons," but complaints that contain no such allegations are "properly dismissed on the pleadings."). Indeed, Plaintiffs also fail to offer any allegations to plausibly connect the policies they cite to any age-based outcome.

Plaintiffs' Response relies on two categories of allegations to plead an age-based disparity, neither of which involves statistics or suggests anything at all about a statistical disparity. First, Plaintiffs plead that they are all over the age of 50, which they label as "revealing." Resp. at 29. But without knowing the age of plaintiffs who were not terminated, or who was terminated that is not a plaintiff in this case, that allegation is meaningless. *Cf. Mandala*, 975 F.3d at 210 (allegations "must, at the very least, focus on the disparity between appropriate comparator groups"). Second, Plaintiffs summarily assert that AT&T treated younger employees more favorably than older employees—including by not subjecting them to similar fraud investigations and, ultimately,

declining to terminate them for similar infractions.  *See* Resp. at 29.  If this is accepted as true, it means the disparate impact claim must be dismissed due to the lack of any neutral policy.  But it also is a legal conclusion that entirely fails to plausibly suggest the required statistical significance. *Oxford House*, 158 F.4th at 494–95.  Because a statistically significant disparate impact is a necessary element of a disparate impact claim, Basler's claim—and, to the extent the Court reaches them, the Arbitration Plaintiffs' claims—must be dismissed for this reason , too.

### 3.    Plaintiffs' Request for Leave to Amend Should be Denied

Plaintiffs' request for leave to amend should be denied, too.  Leave to amend is futile when any "amended complaint would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010).  Plaintiffs have already amended once and failed to plausibly plead disparate impact.  And it is "clear from the face of the complaint that the deficiencies" in their disparate impact claim "cannot be cured." *Turner v. Spaley*, 501 Fed. App'x 101, 102 n.1 (3d Cir. 2012).  Plaintiffs should not get another try to cure those defects.

## III.    CONCLUSION

AT&T respectfully requests that the Court (1) compel Plaintiffs Jennings and McGee to individual arbitration per the terms of the MAA; and (2) delay a ruling on AT&T's motion to compel Plaintiffs Drees and Lefler to arbitration while the parties engage in limited discovery on the issue of their notice of the MAA and its essential terms, without prejudice to AT&T's renewal of its motion to compel arbitration as to Plaintiffs Drees and Lefler at the close of that discovery. In the alternative, should the Court deny AT&T's motion to compel arbitration on the merits, AT&T respectfully requests that the Court dismiss the Arbitration Plaintiffs' disparate impact claim for failure to state a claim.  Regardless of whether the Arbitration Plaintiffs are compelled to arbitration, AT&T respectfully requests that the Court dismiss Plaintiff Basler's disparate impact claim.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Travis J. Murray*

_____

OF COUNSEL:

Brian P. Egan (#6227)
Travis J. Murray (#6882)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
began@morrisnichols.com
tmurray@morrisnichols.com

*Attorneys for Defendant*

Ashley E. Johnson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-2923
(214) 698-3100

Daniel C. Gunning
WILSON TURNER KOSMO LLP
402 West Broadway, Suite 1600
San Diego, CA  92101
(619) 238-3211

Sara B. Tomezsko
PAUL HASTINGS LLP
200 Park Avenue
New York, NY  10166
(212) 318-6000

February 20, 2026

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 20, 2026, upon the following in the manner indicated:

Kimberly A. Evans, Esquire                                   *VIA ELECTRONIC MAIL*
Lindsay K. Faccenda, Esquire
Robert Erikson, Esquire
BLOCK & LEVITON, LLP
222 Delaware Avenue, Suite 1120
Wilmington, DE 19801
*Attorneys for Plaintiffs*

Mark Schloegel, Esquire                                      *VIA ELECTRONIC MAIL*
THE POPHAM LAW FIRM, PC
712 Broadway, Suite 57
Kansas City, MO 64105
*Attorneys for Plaintiffs*


*/s/ Travis J. Murray*
_____
Travis J. Murray (#6882)